UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

TYLER RICHARDS,

                          Petitioner,

      v.                                     9:23-CV-800 (AJB)

A. MONTAGARI

                        Respondent.

───────────────────────────────

APPEARANCES:                                     OF COUNSEL:

TYLER RICHARDS
Petitioner Pro Se
22-B-2641
Mohawk Correctional Facility
P.O. Box 8451
Rome, New York 13440

HON. LETITIA JAMES                       IRA M. FEINBERG, ESQ.
Attorney for Respondent               Ass't Attorney General
New York State Attorney General
28 Liberty Street
New York, New York 10005

ANTHONY J. BRINDISI
United States District Judge

**DECISION & ORDER**

## I.     INTRODUCTION

Pro se petitioner Tyler Richards seeks federal habeas relief pursuant to 28 U.S.C. § 2254.  Dkt. No. 9, Am. Petition ("Am. Pet."); Dkt. No. 9-1, Exhibits; Dkt. No. 11, Decision and Order (directing petitioner to file an affirmation further clarifying issues related to exhaustion); Dkt. Nos. 14, 15, & 17, Affirmations; Dkt. No. 18, Decision and Order (directing respondent to answer the amended petition and affirmations).  Respondent filed an Answer.  Dkt. No. 30,

1

Answer; Dkt. No. 33, Sealed State Court Records; Dkt. No. 33-1, Memorandum of Law.[1] Petitioner was provided with the opportunity to file a reply, Dkt. No. 31, Text Order; however, he instead filed a motion to withdraw the action, Dkt. No. 34, Motion.  The motion was denied without prejudice to renew, and petitioner was provided thirty days to either renew his request for voluntary withdrawal or reply to respondent's opposition.  Dkt. No. 36, Text Order. Petitioner did neither and, consistent with the Court's prior order, the Court considers the matter fully briefed and presumes petitioner seeks a decision on his amended pleading.

For the reasons which follow, the Amended Petition is denied.

## II.    RELEVANT BACKGROUND

### A.    Crimes, Charges, and Pretrial Proceedings

On January 28, 2022, a Warren County Grand Jury handed down a four-count indictment against petitioner.  SCR at 9-10.[2]  The first two counts charged petitioner with Course of Sexual Conduct Against a Child in the Second Degree, a felony offense pursuant to New York Penal Law § 130.80(1)(b), for events occurring during two distinct time periods from December 2013 through March 2015 and the Summer of 2018 through the end of March 2021.[3]  SCR at 9.  The second two counts charged petitioner with Endangering the Welfare of a Child, a misdemeanor offense pursuant to New York Penal Law § 260.10(1), for two

---

[1]  For the sake of clarity, citations to all parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.  The only exception is the State Court Record ("SCR"), Dkt. No.33, where citations will reference the Bates-stamp at the bottom-center of each page, as the exhibit is separately and consecutively paginated.

[2]  An identical copy of the indictment was included as a supporting exhibit later in the state court record.  SCR at 121-22.

[3]  The indictment explains that a person is guilty of Course of Sexual Conduct Against a Child in the Second Degree when an adult "engage[s] in two or more acts of sexual conduct with a child less than thirteen years old, over a period of time not less than three months in duration."  SCR at 9.

distinct time periods from the Summer of 2018 through the end of March 2021 and March 2021 through the middle of April 2021.[4]  SCR at 9-10.

In April of 2022, petitioner's criminal defense attorney filed an omnibus motion seeking several different forms of pretrial relief.  SCR at 42-60.  Approximately ten days after the motion was filed, petitioner appeared, with his counsel, for a plea hearing.  SCR at 61.

### B.      Guilty Plea & Sentencing

On April 21, 2022, petitioner attended a plea hearing with his attorney.  SCR at 61-83. The court began by outlining the plea offer, namely that petitioner was willing to plead guilty to one count of Course of Sexual Conduct Against a Child in the Second Degree – the first count in the indictment – in exchange for a determinate sentence of three to three and a half years' incarceration followed by ten years of post-release supervision.  SCR at 62-63.  Both parties agreed that those were the material terms.  SCR at 64.  Petitioner was then sworn in. SCR at 64.

The court first confirmed petitioner's level of education and that he neither had any underlying medical or mental conditions nor consumed any substances, prescription or otherwise, that would compromise his ability to understand the proceedings and their consequences.  SCR at 65-66.  Petitioner also acknowledged that he was satisfied with his representation and that he and his counsel had discussed the strengths and weaknesses of the prosecution's case and any possible defenses.  SCR at 66.

The court then went over all of the rights that the petitioner would be waiving by entering a plea of guilty, including, the right to a speedy and public trial, a unanimous guilty

---

[4]  The indictment explains that a person is guilty of Endangering the Welfare of a Child when they "knowingly act in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old."  SCR at 9-10.

verdict, the prosecution having to call witnesses and produce evidence so that petitioner would be found guilty beyond a reasonable doubt, file motions and confront the prosecution's witnesses and provide evidence and witnesses for petitioner's own defense, and remain silent.  SCR at 66-68.  Petitioner acknowledged he understood that he was giving up all those rights and the consequences of that waiver with his attorney.  SCR at 68.  The court emphasized that, by entering a plea of guilty, petitioner was foregoing his right to present his case to a jury and raise his defenses, and his plea would be the equivalent of a jury or judge finding petitioner guilty after a trial.  SCR at 68.  Petitioner again indicated his understanding and confirmed that no one had threatened or forced him to plead guilty or made any other promises for sentencing other than what was included in the plea agreement.  SCR at 68.

The court then specifically focused on petitioner's right to discovery.  SCR at 69.  The court confirmed that (1) petitioner and his counsel had received all the prosecution's discovery outlined in the certificate of compliances filed with the court and (2) petitioner and his counsel had seen enough discovery to properly advise petitioner on the present plea offer.  SCR at 70.  Specifically within those discovery disclosures were two search warrant applications and a supporting victim statement, which outlined the accused criminal conduct.  SCR at 30, 166-78, 187-89, 199-211.[5]

The search warrant application indicated that on February 8, 2021, the younger sister of the child victim was at school when she disclosed that her sister had been sexually abused by their stepfather, the petitioner.  SCR at 94, 169, 202.  Unbeknownst to both the child victim

---

[5]  Petitioner also provided the Court with a copy of the redacted grand jury minutes from testimony taken on January 28, 2022.  Dkt. No. 9-1 at 9-52.  The child victim's testimony was consistent with that contained in her statement to law enforcement, which was included in the State Court record as discussed in greater detail *infra*.  *Compare* Dkt. No. 9-1 at 19-34 (grand jury testimony from the child victim) *with* SCR at 187-89, 220-22 (statement of the child victim taken by law enforcement).

and petitioner, the younger sister had observed the abuse.  SCR at 94, 188, 221.  Law enforcement interviewed petitioner that same day, and petitioner "made oral statements [to the police], in sum and substance, in reference to traces of his sperm being on the child victim."  SCR at 169, 202.  Initially, the child victim denied the abuse "because [she] felt like if [she] confirmed it . . . [petitioner] would hate [her or] . . . do something harmful to [her].  [She] was afraid and . . . confused."  SCR at 94.

Eventually, the child victim confided in her mother and provided a statement to law enforcement about the extent of the abuse.  SCR at 169, 202, 187-89, 220-22.  The victim reported that, beginning when she was five years old, the petitioner would ask the victim to manually stimulate his penis with her hands and perform oral sex "at least once per week in the morning while [her] mom was at work."  SCR at 187, 220.  The abuse intensified when the victim reached six years of age, with petitioner vaginally and anally penetrating her.  SCR at 187, 220.  The victim's mother and the petitioner then ended their relationship, and the victim, her mother, and her sister moved to a different town.  SCR at 187, 220.

A year later, the petitioner moved closer to the victim, and she again started spending time with him.  SCR at 187, 220.  After another year had passed, the petitioner started sexually abusing the victim again by asking her to watch pornography, masturbate him, and perform oral sex, as well as vaginally and anally penetrating the victim.  SCR at 187-88, 220-22.  The victim said the frequency increased from "once per weekend" to "almost every day."  SCR at 187-88, 220-21.  The victim stated that petitioner would buy her a milkshake "if [she] used [her] hand or mouth on his privates" and would pay her between $10 and $30 if he penetrated her.  SCR at 187, 220.  Petitioner "would also buy [the victim] things when [they] were out like candy and stuff when he owed [her] for doing things to him."  SCR at 187, 220.

The victim confirmed that on the morning her sister reported the abuse, and petitioner was questioned by law enforcement, he had vaginally penetrated her.  SCR at 188, 221. While the victim reports being questioned that day, she confirms she did not disclose the abuse because she did not feel comfortable with the interviewer and was afraid of getting petitioner into trouble.  SCR at 188, 221.  Finally, the victim indicated that petitioner would take her to Walmart and have her consume a pill that would prevent her from getting pregnant.  SCR at 188-89, 221-222.

A signed waiver of discovery was then presented to the court and petitioner confirmed that the waiver was signed freely and voluntarily after discussing its contents with his attorney.  SCR at 71.  The court concluded "that [petitioner] was properly advised of his right to discovery, and that he knowingly, intelligently and voluntarily waived that right after consulting with his attorney."  *Id.*

The court then spoke to petitioner in detail about waiving his right to appeal.  SCR at 71-72.  In sum, the court stated that "if [petitioner] take[s] an appeal, [he is] by this waiver giving up the right to have the appellate court consider most claims of error and . . . whether the sentence . . . impose[d] . . . is excessive and should be modified.  As a result, a conviction by this plea and sentence will normally be final."  SCR at 72.  Petitioner expressed his understanding.  SCR at 72-73.  Further, the court explained that "[a]mong the limited number of claims that will survive the waiver of the right to appeal . . . are the voluntariness of this plea, the validity and voluntariness of this waiver, the legality of the sentence, the jurisdiction of this court, a defendant's competency to stand trial, and a defendant's constitutional right to a speedy trial."  SCR at 73.  Petitioner again expressed understanding, confirmed that he had

6

discussed waiving his right to appeal with his attorney, and presented the court with a signed waiver of appeal.  SCR at 73-75.

The court then engaged in an allocution with the petitioner, whereupon petitioner acknowledged that he was giving up his right to remain silent and not incriminate himself and confirmed that he lived in Warren County during the time in question, was older than 18 years of age, engaged in acts of sexual conduct – specifically having the child victim grab petitioner's penis with her hand while she was between five and eight years of age – on multiple occasions, for purposes of gratifying petitioner's sexual desires.  SCR at 76-79. Petitioner affirmed that "everything [he] said here [during the allocution was] true and accurate[,]" and pled guilty to Count One in the indictment.  SCR at 80.  The court adjourned the matter for sentencing.  *Id.*

On June 15, 2022, petitioner appeared, with counsel, for sentencing.  SCR at 86-105. During sentencing, the prosecution argued that petitioner should be incarcerated for longer than three years; however, the plea agreement was the best compromise to spare the child victim the trauma of trial and reliving all of her worst memories.  SCR at 97-98.  Petitioner reiterated that he "pled guilty to these crimes because [he is] guilty [and that he feels] appalled every day by the actions [he has] committed."  SCR at 100.  Petitioner was found guilty and sentenced to three and a half years determinate imprisonment plus ten years of post-release supervision.  SCR at 100; *see also* SCR at 106 (Sentence and Commitment Order).

C.    **Challenge to Petitioner's State Custody**

7

In May of 2023, petitioner filed a pro se motion to vacate his judgment pursuant to New York Criminal Procedure Law § 440.10.  SCR at 107-116.  Liberally construing the motion, petitioner

> s[ought] vacatur of his judgment of conviction on the following grounds: (1) his conviction was procured by duress, misrepresentation, or fraud on the part of the court or a prosecutor; (2) false material evidence was utilized in the prosecution; (3) [petitioner] was not charged by Grand Jury indictment nor did he waive his right to be charged by Grand Jury indictment; (4) the accusatory instrument was legally insufficient; (5) [petitioner] was denied his right to a preliminary hearing; (6) there were *Brady* violations in that ' all evidence before the court was falsified;' (7) all 'proceedings' were jurisdictionally defective; (8) [petitioner] was 'deprived of life, liberty, and property;' (9) the occurrence of judicial misconduct, malicious prosecution, an obstruction of justice, a conspiracy to commit a federal crime, and ethics violations [deprived petitioner of a fair trial]; (10) [petitioner experienced] ineffective assistance of counsel; and (11) [there was a] lack of court jurisdiction and illegal actions by the court.

SCR at 158.  The county court concluded that petitioner's arguments were "all conclusory allegations devoid of any sworn allegations of fact whatsoever.  In fact, the lack of any factual specificity . . . has rendered it impossible for th[e county c]ourt to discern any factual basis upon which the [petitioner] is basing his various claims . . . The [petitioner's] self-serving and unsubstantiated claim that his conviction was obtained under duress is contradicted by the transcript of the [petitioner's] plea."  SCR at 160.

Further, the county court held that the merits of petitioner's claims were, at best, incorrect and, at worst, untenable.  SCR at 160-62.  Specifically, the plea transcript made clear that petitioner was provided with all of the discovery before the plea was entered; the assertion that petitioner was not indicted by a grand jury is belied by the record; petitioner's guilty plea waives challenges to his indictment; petitioner's assertion that he was entitled to a preliminary hearing was incorrect since the indictment mooted the requirement for a hearing;

8

and the claims of jurisdictional defects were wholly contradicted by the record.  SCR at 160-62.  Finally, petitioner completely failed to provide any proof that evidence was falsified, as is required for a *Brady* violation, or that his counsel was constitutionally ineffective.  SCR at 161-62.  Consequently, petitioner's 440 motion was denied, without a hearing, on June 20, 2023.  SCR at 163.  Petitioner did not appeal the denial of his 440 motion.

## III.    THE PETITION

Petitioner challenges his 2022 judgment of conviction, from Warren County Court, upon a guilty plea, for Course of Sexual Conduct in the Second Degree.  Am. Pet. at 1-2. Petitioner did not directly appeal his conviction or seek a petition of certiorari from the United States Supreme Court.  Am. Pet. at 3.

Petitioner argues that he is entitled to federal habeas relief because (1) petitioner did not sign a waiver for the grand jury and one took place without either him or his attorney being present at it, Am. Pet. at 5; (2) he was deprived of a preliminary hearing, *id.* at 7; (3) petitioner was wrongly deprived of his personal property since the prosecution refused to return the property taken from his person and private residence, *id.*; (4) petitioner's counsel was constitutionally ineffective, *id.* at 8; and (5) petitioner was subjected to fraud based on the illegal grand jury actions which led to his wrongful indictment, *id.* at 10.[6]

---

[6]  Petitioner made several references to his actual innocence in his affirmation. Dkt. No. 14 at 1; Dkt. No. 17 at 1.  While petitioner did not include a free-standing claim of actual innocence in his amended pleading, to the extent he intended for the Court to liberally construe his submissions to assert one, any such claim would fail.  The Supreme Court has made it clear that if the federal courts recognized a free-standing actual innocence claim it would impose an "extraordinarily high" threshold for factual innocence. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993) (noting that, "in capital cases," "the threshold showing for [a freestanding innocence claim] would necessarily be extraordinarily high"); *House v. Bell,* 547 U.S. 518, 520 (2006) ("whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it" . . . despite having "cast considerable doubt on his guilt.").  Here, for the reasons further discussed *infra*, petitioner has failed to cast any doubt on the voluntary, knowing, and intelligent nature of his plea or his factual guilt, let alone the considerable amount required to meet the high threshold contemplated by the Supreme Court.

Petitioner acknowledges that not all grounds for relief were presented to the highest state court because he "signed off [his] right to appeal [and] all other avenues [were] closed." Am. Pet. at 12.

Petitioner seeks "exoneration and nullification of sex offender status and full monetary value ask for 20 million dollars net . . . and the return of [petitioner's] property that [was] taken by Warren County Court in the condition it was taken in, with no added hardware, software or cod[]ing." Am. Pet. at 15; *see also* Dkt. No. 9-1 at 3.[7]

## IV.    DISCUSSION

### A.    State Criminal Procedural Claims

Petitioner first argues that he is entitled to federal habeas relief because there were so many mistakes that occurred with his state court criminal prosecution including a defective grand jury hearing, the wrongful deprivation of a preliminary hearing, and an unlawful indictment. Am. Pet. at 5, 7, 10; *see also* Dkt. No. 9-1 at 1-2; Dkt. No. 17 at 1-2. Respondent contends that petitioner's claims are plainly meritless because they fail to state federal claims and they are unexhausted and procedurally defaulted. Dkt. No. 33-1 at 15-23. Petitioner asserts that any claims of default should be excused since he is actually innocent of the crime for which he has been convicted. Dkt. No. 14 at 1; Dkt. No. 17 at 1.[8]

When an individual makes the choice to plead guilty to the charges lodged against

---

[7] Petitioner seeks various forms of relief in his amended pleading, including release from custody as well as monetary damages. "The traditional function of the writ [of habeas corpus] is to secure release from illegal custody[.]" *Yearwood v. Barr*, 391 F. Supp. 3d 255, 260 (S.D.N.Y. 2019) (internal quotation marks and citations omitted). Ultimately, "[t]he mismatch between the relief that the petitioner seeks and the harm he alleges makes a petition for a writ of habeas corpus an improper vehicle for his [request for damages]." *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973) (explaining that "the traditional purpose of habeas corpus" is to seek "immediate or more speedy release" from custody and that "habeas corpus is not an appropriate or available federal remedy" for damages claims)).

[8] Respondent also argues that Petitioner's claims are unexhausted and procedurally defaulted. Dkt. No. 33-1 at 20-23. Because the Court has found the claims barred by Petitioner's knowing and voluntary guilty plea, it need not consider other alternative theories for denying and dismissing them.

them, said plea "also serves as a stipulation that no proof by the prosecution need b[e] advanced.  It supplies both evidence and verdict, ending the controversy."  *Boykin v. Alabama*, 395 U.S. 238, 242 n.4 (1969) (internal modifications and citations omitted).  In sum, that "plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."  *Id.* at 242.  Consequently, "a petitioner who pleaded guilty in their underlying state proceeding 'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'"  *Washington v. Bell*, No. 1:20-CV-0718, 2024 WL 2137727, at *4 (S.D.N.Y. May 13, 2024), *report and rec. adopted by*, 2024 WL 2945622 (S.D.N.Y. June 10, 2024) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *see also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings.").

Said another way, "[w]hen a petitioner has pleaded guilty to an offense in state court, the general rule is that the petitioner may only attack the voluntary and intelligent character of a guilty plea."  *Washington*, 2024 WL 2137727, at *4 (internal quotation marks and citations omitted); *see also United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (explaining that where a petitioner provides a counseled guilty plea, "the issue is not the merits of [petitioner's] independent claims . . . but rather whether the guilty plea had been made intelligently and voluntarily with the advice of competent counsel.") (internal quotation marks and citations omitted).

Here, Petitioner pleaded guilty yet does not overtly challenge the validity of that plea.  However, any such challenge would be denied as meritless.  In evaluating whether a plea

was knowing and voluntary, a court may consider, "among other things, [petitioner's] allocution statements." *Carpenter v. Unger*, 9:10-CV-1240 (GTS/TWD); 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).

> [T]he representations of the [petitioner], his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. Aug. 19, 2004) ("Where . . . [petitioner] . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on [petitioner's] sworn statements and hold him to them.").

Petitioner's own words belie any subsequent arguments that his plea was unknowing or involuntary.  First, the court confirmed petitioner's level of education and that he neither had any underlying medical or mental condition nor taken any substance, prescription or otherwise, that would cloud his judgment and ability to understand the proceedings.  SCR at 65-66.  Second, the court established that petitioner was satisfied with his representation and had adequate time to discuss the strengths and weaknesses of his case, as well as repeatedly confirming that counsel had made petitioner aware of the consequences of the various waivers that needed to be signed during the course of the plea hearing.  SCR at 66, 68, 70-71, 73-75.  Third, the court went through, in great detail, the myriad of rights that petitioner would be forfeiting by entering a guilty plea and petitioner specifically

12

acknowledged those rights and their waiver. SCR at 66-68. Fourth, the court explained what types of claims would specifically survive petitioner's waiver of his right to appeal, and petitioner again confirmed his understanding based upon both the discussion with the court and his prior discussions with his attorney. SCR at 72-75.

Petitioner then engaged with the court, in a colloquy, in which he identified the material facts underlying the first count in the indictment prior to pleading guilty to it. SCR at 76-80. These statements demonstrate not only that Petitioner fully understood the consequences of his plea, but also that he was actually guilty of committing the acts for which he was accused. Petitioner's guilt was further supported by his statement during his sentencing that he "pled guilty to these crimes because [he was] guilty[ and that he feels] appalled every day by the actions [he has] committed." SCR at 100.

Petitioner argues that his statement at sentencing was encouraged by his counsel, and that he only made the statement to sound like he was taking responsibility in hopes the judge would show greater leniency in his sentencing decision. Dkt. No. 9-1 at 1. However, petitioner's conclusory argument is contradicted by the rest of the state court record. Petitioner's allocution and sentencing admissions are consistent with the discovery provided to petitioner and his counsel, which was presumably the information upon which petitioner and his counsel determined the strengths and weaknesses of the prosecution's case against him. SCR at 70. Specifically, the grand jury testimony from, and the statement given to law enforcement by, the child victim also supported petitioner's admission that he had the child victim grab his penis with her hands for his sexual gratification on multiple occasions, SCR at 76-79. In her testimony and statement, the child victim outlined years of abuse which followed the same progression, beginning with her manually stimulating petitioner's penis –

as petitioner admitted – after watching pornography, and escalating to oral sex along with vaginal and anal penetration, SCR at 169, 202, 187-89, 220-222; Dkt. No. 9-1 at 19-34. Further, at least some of this abuse was witnessed by the victim's sister, which was why the abuse was initially reported.  SCR at 94, 169, 188, 202, 221.  Finally, petitioner's statement to law enforcement, that he was concerned his sperm might be found on the child victim, SCR at 169, 202, was consistent with the child victim's report that petitioner had vaginally penetrated her on the morning her sister initially reported the abuse at school, SCR at 188, 221.

In sum, Petitioner's knowing, intelligent, and voluntary guilty plea effectively waived all claims relating to events prior to entry of the plea. *See United States v. Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."); *see also Morris v. Smith*, No. 9:13-CV-1441 (GLS/RFT), 2015 WL 13745077, at *5 (N.D.N.Y. July 29, 2015), *report and recommendation adopted*, 2016 WL 4532160 (N.D.N.Y. Aug. 30, 2016).  Thus, petitioner cannot advance claims about the alleged deficiencies in his state court criminal prosecution which preceded his plea.

Even if these state criminal procedure claims were not precluded by petitioner's guilty plea, they would still fail.  Any specific challenges about petitioner's grand jury proceeding are unreviewable because courts in this district have consistently held that a "petitioner's challenge of [a] grand jury proceeding is not cognizable in a habeas corpus proceeding in federal court."  *Shepard v. Rich*, No. 9:23-CV-0897 (TJM/MJK), 2024 WL 5358399, at *9 (N.D.N.Y. Sept. 12, 2024) (citing *Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas

corpus proceeding in federal court.") (citing cases); *see also Hirsh v. McArdle*, 74 F. Supp. 3d 525, 533 (N.D.N.Y. 2015) (same) (citing cases). "Moreover, it is well established that [petitioners] have no constitutional right to appear before a grand jury . . . Accordingly, [there is also] no right under federal law to testify before [a] grand jury that indicted [a petitioner]." *Webb v. LaClair*, No. 1:10-CV-7603, 2014 WL 4953559, at *6 (S.D.N.Y. Sept. 30, 2014) (internal quotation marks and citation omitted). This is because while "[i]n New York, a grand jury indictment arises from the State Constitution and other state laws . . . federal habeas relief may not be granted for violations of state law," and "[t]here is no [separate] federal constitutional right to a grand jury proceeding in a state criminal proceeding." *Shepard*, 2024 WL 5358399, at *9 (citations omitted).

Finally, "[e]ven assuming . . . that [p]etitioner was denied a preliminary hearing, he is not entitled to habeas relief on this basis because there is no federal constitutional right to a preliminary hearing." *Kennedy v. LaClaire*, No. 1:12-CV-0655, 2014 WL 297341, at *7 (W.D.N.Y. Jan. 27, 2014) (internal quotation marks omitted) (citing cases). Accordingly, petitioner's state criminal procedure claims are denied.

### B.    Return of Property Seized Pursuant to the Search Warrants

Petitioner next argues that his Due Process rights were violated when the court refused to return his property that the police seized pursuant to search warrants during their investigation of his crimes. Am. Pet at 7, 15; Dkt. No. 9-1 at 3.

> However, a federal habeas proceeding is not the proper forum in which to request the return of property seized in connection with a state court conviction. This Court may review claims for habeas relief only on the ground that a petitioner's conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Accordingly, [p]etitioner's request is improperly raised in this proceeding.

15

*Akassy v. Kirkpatrick*, No. 1:16-CV-7201, 2019 WL 125947, at *2 (S.D.N.Y. Jan. 8, 2019).

### C.      Ineffective Assistance of Counsel

Petitioner argues that his representation was constitutionally ineffective because his attorney had "very little contact with [petitioner] while working on [his] case [and] gave little to no guidance [to petitioner] other than 'This is a good deal.'"  Am. Pet. at 8; *see also* Dkt. No. 9-1 at 1 (sharing that his counsel's primary advice was to take the plea deal because if he did not, he would "be wasting [the attorney's] and the ADA's time."); Dkt. No. 9-1 at 2 (concluding a competent counsel would not have recommended that petitioner "take the plea right away").  Petitioner contends his counsel "was only concerned about the grand jury minutes and not about any of the discovery[.]"  Am. Pet. at 8.  Petitioner also complains that his conversations with his attorney were unlawfully recorded because his counsel did not want to set up legal calls.  Am. Pet. at 8.  Respondent argues that the claim is unexhausted and plainly meritless.  Dkt. No. 33-1 at 24-27.  Petitioner asserts that any claims of default should be excused since he is actually innocent of the crime for which he has been convicted.  Dkt. No. 14 at 1; Dkt. No. 17 at 1.

Respondent begins with a discussion outlining the discrepancies between the facts and arguments petitioner used to support his ineffective assistance of counsel claim in his 440 motion and his amended pleading and how this discrepancy impacts exhaustion.  Dkt. No. 33-1 at 24-25.  Petitioner continues to rely on his claims of actual innocence to excuse any issues with exhaustion.  Dkt. No. 14 at 1; Dkt. No. 17 at 1.  "[P]otentially complex and difficult issues about [exhaustion and] the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claim[ is] totally without merit."  *Quinney v. Conway*, 784 F. Supp. 2d 247, 260 (W.D.N.Y. 2011 (citing cases).  Therefore, while the

16

parties dispute whether the claims have been properly exhausted and if that prerequisite should be excused, the Court will not further discuss those arguments because, as it will explain, Petitioner's claim is completely meritless.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness; but for counsel's alleged errors, the result of the proceedings would have been different; and, as a result, petitioner suffered prejudice. *Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The *Strickland* test applies "to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). To establish prejudice in this instance, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Here, Petitioner has failed to meet that standard. Petitioner has provided no grounds nor cited to any facts that would cast doubt on the knowing, intelligent, and voluntary nature of his plea. The only information petitioner put forth about the advice he received was that he should take the plea and doing otherwise would waste the time of everyone involved. While this may not have been the advice that petitioner wished to hear, it was neither unreasonable nor incompetent given the amount of evidence that pointed to petitioner's guilt. Counsel shared all the discovery with petitioner, and some of the most inculpatory evidence was that which petitioner included as exhibits to his own pleading and affirmation. Accordingly, the petitioner was aware of the evidence against him and the risk that the victim's testimony,

17

bolstered by her sister's observations and disclosure and his own statements to law enforcement, would result in his conviction on multiple counts of the indictment.

Additionally, petitioner's complaints about his calls being recorded are also conclusory and do not indicate if or how his ability to communicate with his counsel was impaired. Further, petitioner's claim that his counsel was unduly focused on the grand jury testimony also does not show any deficient performance by his counsel.  In fact, it shows that his attorney was contemplating the evidence before them and assessing the strengths and the weaknesses of the prosecution's case.  "[H]abeas courts [must] consider whether a [petitioner] has provided any new evidence to suggest that he would in fact have acted differently but for his attorney's flawed advice."  *Scott v. Superintendent, Mis-Orange Corr. Fac.*, No. 03-CV-6383, 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006).  Petitioner fails to make such a showing, and the record before the Court precludes it from reaching any such conclusion.

In fact, Petitioner has done the converse by "explicitly stat[ing] in his allocution that he fully under[stood] the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney."  *Scott*, 2006 WL 3095760, at *9*; see also Hill v. West*, 599 F. Supp. 2d 371, 392 (W.D.N.Y. 2009) (concluding that petitioner's plea was "knowing and voluntary" and petitioner's "attacks on [his] trial counsel [lacked substance]" where "the record establishe[d] that [petitioner] readily admitted to his culpability," for the criminal conduct and "[t]he trial court made certain to obtain confirmation that [petitioner] had consulted with his attorney . . . and was fully satisfied with counsel's performance[.]"); *Garner v. Lee*, 908 F.3d 845, 867 (2d Cir. 2018) (holding "that solemn declarations in open court carry a strong presumption of verity and that the subsequent presentation of conclusory

allegations unsupported by specifics is often subject to summary dismissal.") (original

modifications, quotation marks, and citations omitted).  In sum, the "failure to allege that

correct advice from [trial] counsel would have altered the [Petitioner's] decision is fatal to [his]

ineffective assistance claim to the extent that the claim relates to [Petitioner's] decision to

plead guilty."  *Smith v. Burge*, No. 1:03-CV-8648, 2005 WL 78583, at *12 (S.D.N.Y. Jan. 12,

2006) (citations omitted).

## V.    CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the Amended Petition, Dkt. No. 9, be **DENIED and DISMISSED** in its

entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because Petitioner

has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C.

§ 2253(c)(2) requires;[9] and it is further

**ORDERED** that any further request for a Certificate of Appealability must be

addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk of the Court respectfully provide Petitioner with copies of the

unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron*

*v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall serve a copy of this Order upon the parties in

accordance with the Local Rules.

---

[9]   *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

**IT IS SO ORDERED.**

Dated: April 13, 2026

      Utica, New York

Anthony J. Brindisi
U.S. District Judge